[No. 17680. Department Two. January 24, 1924.]

THE STATE OF WASHINGTON, *Respondent*, v. O. V. ALLEN, *Appellant*.[1]

INDICTMENT AND INFORMATION (75)—RAPE (7)—INFORMATION—DUPLICITY. An information for rape is not duplicitous in that it charges statutory rape of a child under the age of consent, under Rem. Comp. Stat., § 2436, and also forcible rape of a female not the accused's wife, under Id., § 2435, because it charges the forcible rape of a child under the age of thirteen years; since the acts are but overlapping statutes as to which there is no implied repeal or conflict, and permits an election by the prosecuting attorney.

CRIMINAL LAW (36)—VENUE—CHANGE—DISCRETION—LOCAL PREJUDICE—REVIEW. The denial of a change of venue asked on the ground of local prejudice will not be disturbed on appeal, in the absence of manifest abuse of discretion.

RAPE (20)—EVIDENCE—PHYSICAL EXAMINATION OF PROSECUTRIX. In a prosecution for rape, the court is without power to order a physical examination of the prosecuting witness by a physician.

CRIMINAL LAW (212)—TRIAL—RECEPTION OF EVIDENCE—TESTS OR EXPERIMENTS. In a prosecution for rape, the defendant is not entitled to have the garments of the prosecuting witness examined to establish that they were without seminal stains, where no such claim was made and they were offered in evidence for the purpose of showing their condition at the time of their removal.

WITNESSES (60)—EXAMINATION—LEADING QUESTIONS. An objection to questions as leading are not well taken where they did not suggest the answer, nor were so framed as to permit mere negative or affirmative answers.

SAME (81)—CROSS-EXAMINATION—MATERIALITY—REMOTENESS. In a prosecution in which it was shown that the accused and the father

[1]Reported in 222 Pac. 502.

of the prosecuting witness became drunk at her home, it is not error to exclude a question as to whether her father had liquor at the house on other occasions.

RAPE (27)—EVIDENCE—SUFFICIENCY. A conviction of forcible rape of a child between thirteen and fourteen years of age is sustained by her evidence of the forcible ravishment when they met on a lonely road, corroborated by her complaints to her mother immediately on reaching home, and by a physical examination made the next day, and the attempted flight of the accused.

CRIMINAL LAW (317)—TRIAL—INSTRUCTIONS—REQUESTS. It is not error to refuse an instruction in the language requested when it is otherwise sufficiently covered.

Appeal from a judgment of the superior court for Benton county, Truax, J., entered September 29, 1922, upon a trial and conviction of rape. Affirmed.

*Charles W. Johnson,* for appellant.

*Geo. O. Beardsley* and *G. W. Hamilton,* for respondent.

FULLERTON, J.—This is an appeal from a judgment of the superior court of Benton county convicting the appellant of the crime of rape. The assignments of error will be noticed in the order in which they are presented in the briefs.

The information charges that the appellant ''in the county of Benton, state of Washington, on the 28th day of March, 1922, did, then and there being, unlawfully, feloniously and wilfully and forcibly, overcoming her resistance, against her will and without her consent, have sexual intercourse with one Florence Sugars, a female child of the age of thirteen years, and not the wife of said'' appellant. To this information the appellant demurred on the ground that more than one crime is charged therein. The demurrer was overruled, and this ruling the appellant makes the basis of his first assignment of error.

The statute (Rem. Comp. Stat., § 2435) [P. C. § 9107], defines the crime of rape as "an act of sexual intercourse with a female not the wife of the perpetrator committed against her will and without her consent," and provides that "every person who shall perpetrate such an act of sexual intercourse with a female of the age of ten years or upwards not his wife . . . when her resistance is forcibly overcome . . . shall be punished . . ." The statute in a subsequent section (*Id.*, § 2436) [P. C. § 9108], makes it an offense to carnally know and abuse any female child under the age of eighteen years not the wife of the perpetrator of the crime. It is the contention of the appellant that the information is a compound of these statutes and is thus so far duplicitous as not to inform the defendant of the particular offense with which he is charged. But we are not persuaded that the contention is well founded. It is at once apparent, of course, that the provisions of the one section of the statute overlap the provisions of the other—that is to say, a single act may be a rape by force and a rape because of the age of the victim of the offense—but this circumstance does not prohibit a prosecution founded on either section of the statute. There is no such direct conflict that the one impliedly repeals the other, and in such cases the prosecuting officer has the right of election to proceed under either. Here the election was to proceed under the section containing the element of force, and we conclude that the prosecuting officer was within his privileges in so doing.

There had been a prior trial of the cause in Benton county, and between that time and the time of the present trial the appellant moved for a change of venue on the ground of excitement and prejudice existing against him in the county named. This motion was

denied by the trial court and error is assigned thereon. The application is based on affidavits, to which counter affidavits were filed. These indeed show that prejudice existed against the defendant among the persons residing in the vicinity of the crime, and perhaps also to some extent in the locality of the appellant's residence. But the question whether or not a change of venue will be granted rests so largely within the discretion of the trial court that it will only be reviewed for manifest abuse; *State v. Welty*, 65 Wash. 244, 118 Pac. 9; and we can find no such abuse to exist here. Moreover, we now have the benefit of the trial record and this does not show that there was any unusual difficulty in obtaining an impartial jury.

The appellant, through his attorney, moved the court for an order requiring the prosecuting witness to submit to a physical examination of her person by a physician named in the motion. This motion the trial court denied, and its ruling thereon furnishes the basis for the third error assigned. The question suggested by the motion seems not often to have received the consideration of the courts. The only case that has been called to our attention where the question was actually involved is *McGuff v. State*, 88 Ala. 147, 7 South. 35. In that case the court said:

"We do not doubt the correctness of the court's ruling in refusing to compel the infant to submit to an examination of her person by medical experts, on motion of the defendant made at the trial. Such a practice has never prevailed in this state, and if adopted as matter of right in all cases of prosecution for rape, the temptation to its abuse would be so great that it might be perverted into an engine of oppression to deter many modest and virtuous females from testifying in open court against the perpetration of one of the most barbarous and detestable of all crimes. We have repeatedly held that a conviction for rape may

be sustained on the uncorroborated testimony of a prosecutrix, which excludes the idea of any necessity for corroboration by an examination of her person, either by medical experts or others. In *Barnett v. State,* 83 Ala. 40, we accordingly held there was no error in the trial court's refusal to advise the jury not to convict, unless the testimony was corroborated by an examination of her person by medical or other experts, and that her refusal to submit to such examination would subject her evidence to discredit. 'However forcible,' we observed, 'such a suggestion may be, under some circumstances, as an argument to a jury, the law does not require it.' It is true that, in divorce cases, the courts of this country and of England, as also of Scotland and France, have exerted their jurisdiction to compel *the parties* to suits to submit to a surgical examination or inspection of the person in order to ascertain the fact of incurable impotence, when made the ground upon which the dissolution of the bonds of marriage is sought. This is limited to the necessity of the particular case, and is permitted only to prevent the miscarriage of justice. . . . So in a recent case, cited by appellant's counsel, in an action of damages for permanent injury to the plaintiff's eyes, no medical expert having testified, it was held error in the trial court to refuse to make an order, on defendant's request, to compel the plaintiff to submit to an examination by a medical expert who had been called as a witness, and was then present in court ready to testify. . . . There are many similar decisions, made in modern civil actions for physical injuries, where the courts in proper cases have compelled the plaintiff or injured person to submit his person to the inspection of experts, in order to ascertain the nature and extent of such injuries. . . . The authority and soundness of these cases need not be challenged, although some courts in this country have declined to follow them. They are cases where the court had jurisdiction of the parties to a litigated case pending before it, who were invoking the assistance of its arm in aid of their civil rights. In this case, the witness is no party to any civil suit, but has been sum-

moned at the instance of the state to testify in a criminal prosecution against an alleged violator of the law. It may be well doubted, in cases of rape and cognate offenses, whether the court has the power to make an order compelling the inspection of the private person of a prosecutrix, in the event of her refusal to submit to such examination. If such right exists at all, we should hold it to be a matter of judicial discretion with the trial court, to be exercised only in cases of extreme necessity, and not a subject of review on appeal to this court."

In a more recent case from the court of appeals of California (*People v. Preston,* 19 Cal. App. 675, 127 Pac. 660), a contrary view was expressed. But the question was not there before the court. What was said on the subject was said in answer to an objection to the sufficiency of the evidence to sustain a conviction, it being contended that the proof of the overt act ought not to be allowed to rest on the naked oral testimony of the prosecuting witness where there were means of determining it by the more positive evidence of an examination of her person.

But it is our opinion that the better view is that adopted by the court of Alabama. The court can, of course, compel a female witness to come into court and testify as to facts material to the issues, no matter how humiliating or disgusting the details of the facts may be, but this is a far different matter than compelling her to submit the most private parts of her person to the examination of strangers. The victim of a carnal assault is not a party to an action brought by the state against the offender to punish him for the assault. The state is the real party, and its officers determine whether or not such a prosecution will be had, and this without regard to the wishes or desires of the victim. Often she is not even a necessary witness in the cause. But, whether a witness or not, in her con-

nection with the prosecution she stands on a plane with all other persons and has the same rights and privileges, and it would be a strange doctrine to say that a court has power to order a compulsory physical examination of anyone for the mere purpose of supporting or confuting evidence given at a trial of a cause. It is our opinion that the court is without such power.

The cases relied upon by the California court to support its opinion are civil cases where a physical examination has been permitted in actions for personal injuries, and are, in our opinion, not in point. In cases of that sort the court does not fine or imprison for a disobedience of the order, nor does it hold that disobedience is a matter of contempt. As we pointed out in *Lane v. Spokane Falls & Northern R. Co.*, 21 Wash. 119, 57 Pac. 367, 75 Am. St. 821, 46 L. R. A. 153, it but requires the plaintiff to submit to such an examination as a condition precedent to the maintenance of his action. Whether the action will continue or be dismissed is, therefore, at the will of the plaintiff, and no public right is invaded if he chooses the alternative of a dismissal. But the same rule does not obtain in a criminal case. If the right to order such an examination exists at all, it exists as a power, and the court has a duty to enforce it. It must enforce it, moreover, by fine and imprisonment, as it has no authority to direct a dismissal of the action for a mere disobedience of its order by a witness. The cases, therefore, are in no way analogous and the rule of the one does not support the rule of the other.

In the former trial of the cause the undergarments of the prosecuting witness were at the time of the alleged offense exhibited to the jury. Anticipating that they might be again offered in evidence, the appellant,

prior to the present trial, moved the court for an order directing the clerk to forward the garments to the "Spokane Clinical Laboratory, or some other laboratory, for examination as to stains or evidence of ravishment . . . that the same may be examined and a report made to the above entitled court and to counsel for the defendant." This motion the court denied, and it also denied similar motions, one made at the opening of the trial and another at the conclusion of the testimony of a medical witness testifying on behalf of the appellant. No request was made that the garments be placed at the disposal of the appellant so that he could have them microscopically examined by his own experts, and, of course, there was no denial of such a request. The state's own expert did not testify, nor did the state claim that the stains upon them were seminal, but simply introduced them for the purpose of showing what their condition was at the time of their removal from the person of the prosecutrix. Conceding, therefore, that the appellant would have had the right to have his motion granted in a proper case, we cannot think this instance presents such a case. The most favorable circumstance to the defendant that could arise from such an examination would be to establish the fact that the garments were without seminal stains. But since the state made no claim that they had upon them such stains, it would seem that he had the benefit of the fact as the evidence stands. But, more than this, under all circumstances the granting or refusing to grant such an order must rest in the discretion of the trial judge, to be reviewed only for manifest abuse. Clearly, there was here no such abuse. Of the cases from this court which have been called to our attention the one having the most direct bearing on the question is *State v. Payne,* 10 Wash. 545, 39 Pac. 157.

It was there objected that the trial court had erred in refusing to require the state to call all of the eye witnesses of the homicide for which the defendant was on trial, and had erred in refusing the defendant's request to require the production of a so-called dying declaration of the victim of the homicide. The court held that there was no error in the rulings; saying that "there is no reason why the prosecution should not be allowed to present its own evidence in its own way, and the defendant be required to do the same." It was admitted that circumstances could arise which might require the application of a different rule, but that this "must be left to the sound discretion of the trial court."

The fourth assignment of error groups a number of matters predicated on the admission and exclusion of evidence. These we think require no detailed consideration. Relating to the admission of evidence, the principal objection is that the court permitted the prosecuting attorney to put leading questions to the state's witnesses. But in the instances pointed out we find no violation of the rule. In order to direct the attention of a witness to the specific matter concerning which his testimony is desired, it is often necessary to include in the question something of detail, but questions of this sort are not leading unless they suggest the answer desired, or unless they are so specific as to permit the witness to answer "yes" or "no," and thus testify in the language of his interrogator rather than in his own. The questions here objected to were not of these sorts. They did not suggest the answer, nor were they so framed as to permit mere affirmative or negative answers.

Relating to the exclusion of evidence, it appeared from the state's testimony that the appellant came to

the home of the parents of the prosecuting witness with a quantity of intoxicating liquor in his possession which he and an elderly man then at the place drank in sufficient quantities to intoxicate them. On cross-examination of the prosecuting witness she was asked whether it was not a fact that her father, the elderly man mentioned, and different persons, had liquor at the house both before and after the appellant's visit. The court sustained an objection to the question on the ground of immateriality. In this we find no reversible error. It is true that a wide latitude is permissible in the cross-examination of witnesses in cases of this sort, but it is plain that neither an affirmative nor a negative answer to the question would have tended in any way to enlighten the jury on the actual issue involved. An affirmative answer to the question might possibly have indicated that the home surroundings of the witness were not of the best, but this could only reflect upon her credibility, and if the question were permissible under the view that it reflected on her credibility, the inference is so remote that to sustain an objection to it is not reversible error. There were other questions of a similar sort to which objections were sustained, but these are sufficiently answered by saying that they were even more remote than the one here considered.

It is next contended that the evidence is insufficient to support the verdict. The evidence on the part of the state tended to show that the prosecuting witness was a girl between the ages of thirteen and fourteen years; that she lived with her parents on a wheat farm in a somewhat thinly settled portion of Benton county; that she was attending school at a school house some four and one-half miles from her home; that she rode on horseback to and from the school each day, usually

reaching her home on returning from school shortly after four o'clock in the afternoon; that, when she was returning to her home after the close of school on March 28, 1922, she met the appellant in a lonely part of the road; that he stopped her, forcibly took her from her horse and forcibly ravished her. There were no witnesses to the actual occurrence other than the girl and the appellant, but the girl is corroborated by the circumstance that she made complaint of the offense to her mother immediately after reaching home and before she had dismounted from her horse, and by the further fact that an examination of her person had on the next day showed that her hymen had been recently perforated. There were the further circumstances that the appellant knew of the fact that the girl was attending school; that she rode to and from the school on horseback, and knew of the hour of her probable return from the school. There was evidence also tending to show that the appellant attempted flight. Clearly, there was here sufficient evidence to warrant the jury in returning a verdict of guilty.

Finally, it is objected that the court erred in his instructions to the jury, and erred in refusing to give certain requested instructions. These, also, we think, do not require detailed notice. The court, with painstaking care, in clear and concise language, stated to the jury the issues of the case and the facts necessary to be found before a verdict of guilty could be reached. It also, with like precision, gave the usual cautionary instructions, and we cannot feel that the verdict was the result of want of enlightenment on the part of the jury of the law applicable to the case. Certain of the requested instructions might properly have been given in the language in which they were couched, but all that is material in them were covered by the instructions as

given by the court. This satisfies the rule. In this jurisdiction it is not essential that a requested instruction be given in the language of the request. The court may instruct in its own language, and if the substance of the request is covered, error cannot be predicated thereon.

The judgment is affirmed.

MAIN, C. J., PARKER, and TOLMAN, JJ., concur.